IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANGELA SWAGLER, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. RDB 08-2289 |
| HARFORD COUNTY, et al., | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

On December 1, 2008, Plaintiffs Angela Swagler, Elizabeth Walsh and Joan Walsh brought this action asserting numerous constitutional and common law claims against Harford County (the "County"), the Town of Bel Air, the Superintendent of the Maryland State Police, the Sheriff of Harford County, three Maryland State Police troopers, three Bel Air Police officers, an unnamed employee of the State of Maryland ("Jane Doe 1"), and an unnamed employee of Harford County ("Jane Doe 2"). Plaintiffs' lawsuit relates to their arrest, search, and detainment that occurred after their involvement in an anti-abortion protest on August 1, 2008, in Harford County, Maryland.[1]

On June 29, 2009, this Court issued a Memorandum Opinion and Order granting in part and denying in part several dispositive motions submitted by the originally named defendants.

---

[1] The instant action is the first of two lawsuits that have arisen from the arrest and detainment of protestors from the August 1, 2008, anti-abortion demonstration. The companion case, filed on July 23, 2009, by fellow demonstrators Jack Ames, Laura Beeson, Nathan Cain, Patrick Mooney, Albert Stecklein, Timothy Sullivan, and Jessica Ward, includes many of the same defendants that are named in the instant case. On May 4, 2010, this Court issued a Memorandum Opinion and Order denying two dispositive motions submitted by the defendants in the companion case. *See Ames v. Harford County*, No. 09-1929, 2010 U.S. Dist. LEXIS 43339 (D. Md. May 4, 2010).

*See Swagler v. Harford County*, No. 08-2289, 2009 U.S. Dist. LEXIS 47895 (D. Md. June 2, 2009). Plaintiffs were subsequently granted leave to amend their complaint. In their Second Amended Complaint (Paper No. 125), filed on December 1, 2009, Plaintiffs Angela Swagler and Elizabeth Walsh[2] have named State Trooper Sergeant Dona Bohlen and Harford County employee Doris Presbury as Defendants, in replacement for Jane Doe 1 and Jane Doe 2, respectively. Pending before this Court is Defendant Bohlen's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Paper No. 138). The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, Defendant Bohlen's motion is DENIED IN PART and GRANTED IN PART. Specifically, the motion is denied as to the claims asserted against Defendant Bohlen in her individual capacity but granted as to the claims brought against her in her official capacity.

## BACKGROUND

The underlying factual allegations of this case have been fully explicated in the background section of this Court's Memorandum Opinion of June 29, 2009 (Paper No. 86). In their Second Amended Complaint, Plaintiffs have advanced supplemental allegations that pertain to Defendants Bohlen and Presbury[3] and the roles they played in the underlying events.

It is alleged that Sgt. Bohlen operated in a supervisorial function and that she authorized and directed the Defendant Troopers to arrest the Plaintiff demonstrators on August 1, 2008. Sec. Am. Compl. ¶¶ 16, 49, 123(a). Bohlen is also alleged to have subjected each of the arrested female protestors (except Angela Swanson) to a sexually invasive search in the police station

---

[2] Joan Walsh, who was originally named as a plaintiff in this case, voluntarily withdrew as a party on September 21, 2009.
[3] Because no dispositive motion has been filed on behalf of Defendant Presbury, the amended allegations asserted against Defendant Presbury are not explicated in detail in this Memorandum Opinion. On February 4, 2010, Defendant Presbury filed her Answer to the Second Amended Complaint. (Paper No. 141.)

2

parking lot. *Id.* ¶¶ 56-62. During her searches of the female arrestees, she "pulled out the top of their shirt collars and looked down their shirts to facilitate inspection of their breasts, and reached down their pants and felt around below their waist lines." *Id.* ¶ 57. These searches were allegedly conducted "in the presence of both male companions and male police officers," and one of the searches was done on a minor female immediately next to one of the male arrestees who was also a minor. *Id.* ¶¶ 56, 59. The sexually invasive searches were not conducted on the male arrestees. *Id.* ¶ 62. Plaintiffs have alleged that Sgt. Bohlen performed the sexually invasive searches "under the final authority of Defendants [Maryland State Police Superintendent Colonel Terrence] Sheridan, [Harford County Sheriff L. Jesse] Bane, and Harford County." *Id.* ¶¶ 151, 163.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Therefore, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). A complaint must meet the "simplified pleading standard" of Rule 8(a)(2), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Although Rule 8(a)(2) requires only a "short and plain statement," a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations

contained in a complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* Thus, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 556).

Where, as here, Defendants seek to dismiss the Plaintiffs' civil rights complaint, this Court "must be especially solicitous of the wrongs alleged" and "must not dismiss the claim unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." *Edwards*, 178 F.3d at 244 (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)) (emphasis in original); *see also Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

## ANALYSIS

In her motion to dismiss or for summary judgment, Defendant Bohlen adopts by reference all of the defenses raised in the prior dispositive motion filed by the Maryland State Police Defendants ("MSP Defendants").[4] In addition, Bohlen argues that: (1) she is entitled to Maryland personnel immunity as to the common law claims; (2) the search she conducted on the Plaintiffs was not unlawful; and (3) she has been improperly named in her official capacity.

A) Common Law Claims

Sergeant Bohlen contends that she is immune to the state law claims of false arrest and imprisonment (Count VIII) and assault and battery (Count IX) under the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12-101, *et seq.* She contends that Plaintiffs have

---

[4] The Maryland State Police Defendants named in the Second Amended Complaint are Colonel Terrence Sheridan and Maryland State Police Troopers Christopher Bradley, Charles Neighoff, and Walter Rasinski.

failed to allege facts that would support an inference that she acted maliciously in regards to the complained of arrests and searches.

The MTCA serves as a limited waiver of sovereign immunity and it provides the sole means by which the State of Maryland and its personnel may be sued in tort. The statute grants immunity to state personnel "from liability in tort for a tortious act or omission that is within the scope of [their] public duties . . . and is made without malice or gross negligence . . . ." Md. Code Ann., Cts & Jud. Proc. § 5-522(b).[5]

Municipal officers similarly enjoy immunity from suit when they act "in a discretionary capacity, without malice, and within the scope of [their] employment or authority." Md. Code Ann., Cts & Jud. Proc. § 5-507(b)(1). This statute codified Maryland common law immunity as it pertains to public officials of Maryland counties, such as police officers. *Livesay v. Baltimore County*, 384 Md. 1, 12 (2004). It is well-established that "the actions of police officers within the scope of their law enforcement function are quintessential discretionary acts." *Williams v. Prince George's County*, 112 Md. App. 526, 550 (1996).

Under both state statutory immunity and public official immunity, the protection afforded is of a qualified nature—that is, defendants are shielded from liability as long as they act without malice. Under Maryland law, "malice" is defined by reference to "actual malice," and may be represented by "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Shoemaker v. Smith*, 353 Md. 143, 163 (1999) (quoting *Leese v. Baltimore County*, 64 Md. App. 442, 480 (1985)). Plaintiffs asserting malice are held to a high pleading standard that may not be satisfied by conclusory allegations. *See Hovatter v. Widdowson*, No. CCB-03-2904, 2004 U.S. Dist. LEXIS 18646, at *23 (D. Md. Sept. 15, 2004) ("although the amended complaint

---

[5] Plaintiffs do not allege that Sgt. Bohlen acted with gross negligence.

repeatedly states that all of the defendants acted with malice towards [Plaintiff] . . . these bare legal conclusions are not binding on the court"); *Elliott v. Kupferman*, 58 Md. App. 510, 528 (1984) ("[m]erely asserting that an act was done maliciously, or without just cause, or illegally, or for improper motive does not suffice. To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious).

Plaintiffs' Second Amended Complaint sets forth allegations that describe Sgt. Bohlen's conduct as malicious. With regards to the arrests and her authorization of the dispersal order, Sgt. Bohlen allegedly "mischaracterized the nature of Plaintiffs' activities to make them seem disruptive [and] expressed hostility to Plaintiffs' message." Sec. Am. Compl. ¶ 123(a). In addition, she allegedly made statements suggesting that the demonstrators' detainment "was used as a form of punishment for failing to obey Defendant Troopers' illegal dispersal order." *Id.* ¶ 128(l). Accordingly, with respect to the false arrest and imprisonment claim in Count VIII, Plaintiffs have set forth particularized allegations of malicious conduct by Sgt. Bohlen.

Plaintiffs also claim that Sgt. Bohlen's performance of a sexually invasive strip search in the police station parking lot was unnecessary and disproportionate in the context of misdemeanor arrests that did not involve weapons or contraband. *Id.* ¶¶ 128(m), 152. In addition, Sgt. Bohlen allegedly conducted the searches in a public setting and in front of male arrestees and police officers. *Id.* ¶¶ 56, 59, 60, 151. Thus, with respect to the assault and battery claim in Count IX, Plaintiffs have asserted individualized allegations indicating that Sgt. Bohlen acted with malice in searching some of the female demonstrators.

B) Claims Relating to the Strip Searches (Counts IV, VI, VII)

Sergeant Bohlen allegedly conducted a sexually invasive strip search[6] of Plaintiffs in the parking lot of state police barracks. Defendant claims that the search at issue could not be legitimately characterized as a "strip search." In addition, it is argued that the search was reasonable and that Sgt. Bohlen is otherwise entitled to qualified immunity. Finally, Defendant argues that the Plaintiffs have not properly alleged an equal protection claim regarding the search in Count VII.

As an initial matter, this Court finds that Plaintiffs' allegations could support a finding that the search conducted by Sgt. Bohlen was an unconstitutional "strip search." The Fourth Circuit has defined the term "strip search" as an "unnecessarily intrusive search"—a term that must be considered in light of each case's unique context and facts. *Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001) (citing *United States v. Dorlouis*, 107 F.3d 248, 256 (4th Cir. 1997)) (finding that the act of pulling down a suspect's trousers, while leaving his boxer shorts intact, constituted a strip search). In *Amaechi*, the court noted with approval a state law definition of a strip search as "having an arrested person remove or arrange some or all of his clothing so as to permit a visual inspection of the genitals, buttocks, anus, female breasts, or undergarments of such person."[7] 237 F.3d at 366. In this case, Plaintiffs have alleged that Sgt. Bohlen "pulled out the top of their shirt collars and looked down their shirts to facilitate the inspection of their breasts, and reached down their pants and felt below their waist lines." Sec. Amend. Compl. ¶ 57. These allegations describe a search that was unnecessarily intrusive under the circumstances; therefore Sgt. Bohlen's search is properly classified as a strip search.

---

[6] Defendant argues that Plaintiffs have not labeled the search as a "strip search." Bohlen's Mot. to Dismiss and/or for Summ. J. at 7. However, Plaintiffs' Second Amended Complaint repeatedly describes Sgt. Bohlen's search as a "strip search." Sec. Amend. Compl. ¶¶ 123, 151, 176.

[7] Plaintiffs note that the MSP's strip search policy similarly defines a strip search as "the removal or rearrangement of any clothing which permits a visual inspection of the genitals, buttocks, anus or female breasts, or undergarments of an arrestee." (Ex. 1 to Pls.' Opp.)

In addition, Plaintiffs have successfully stated claims for constitutional deprivations relating to the strip searches in Counts IV and VI and there are no qualified immunity grounds that would forestall the claims against Sgt. Bohlen at this stage of the proceedings. This Court has observed that "the right of those arrested for offenses not likely to involve weapons or contraband to be free from strip searches without any individualized finding of reasonable suspicion appears to be clearly established." *Jones v. Murphy*, 470 F. Supp. 2d 537, 547 (D. Md. 2007) (citing *Logan v. Shealy*, 660 F.2d 1007, 1013 (4th Cir. 1981); *Amaechi*, 237 F.3d at 365). In addition, Sgt. Bohlen is alleged to have conducted the strip searches in a non-private setting. *See Amaechi*, 237 F.3d at 364 ("we have repeatedly emphasized the necessity of conducting a strip search in private").

Finally, this Court has observed that gender-specific strip searches are unconstitutional. *See Jones*, 470 F. Supp. 2d at 548 (citing cases from other jurisdictions). Indeed, gender-based strip searches have been explicitly found to be unconstitutional on equal protection grounds. *Id.* (citing *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273-74 (7th Cir. 1983) (ruling that gender-based strip searches violate the Equal Protection Clause)). Plaintiffs have alleged that Sgt. Bohlen's strip searches were conducted on each of the female arrestees (except Plaintiff Angela Swanson), but that they were not performed on the male arrestees. Sec. Am. Compl. ¶¶ 57, 62. As a result, Plaintiffs claims relating to Sgt. Bohlen's searches, as set forth in Counts IV, VI, and VII, may proceed.

C) Official-Capacity Claims

In their Second Amended Complaint, Plaintiffs have also named Sgt. Bohlen in her official capacity.[8] In official capacity claims brought under § 1983, plaintiffs may seek

---

[8] In the companion case, Sgt. Bohlen was named as a defendant only in her individual capacity. *See Ames v. Harford County*, Civil Action No. RDB-09-1929, Paper No. 30, ¶ 16.

prospective injunctive relief to prevent ongoing violations of federal law.  *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

In an official-capacity action, plaintiffs must show that the government entity was the "moving force" behind the deprivation, in that the "policy or custom" of the entity or official, "played a part in the violation of federal law."  *Graham*, 473 U.S. at 166 (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)).  Towards this end, the government official being sued must be shown to be a final policy-making authority for the governmental entity that he represents, and the entity's policy must be shown to have played a role in the constitutional violation.  *Graham*, 473 U.S. at 166.  "Whether a particular defendant has 'final policy making authority' is a question of state law."  *Praprotnik*, 485 U.S. 112, 123 (1988) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).  Courts appropriately address this legal question in reviewing dispositive motions.  *See Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737 (1989).

Plaintiffs allege that Sgt. Bohlen assumed a supervisorial function when she directed the other Defendant Troopers to issue dispersal orders and to arrest the demonstrators.  (Sec. Am. Compl. ¶¶ 16, 49.)  Defendant Bohlen, however, contends that she was merely a low level supervisor of the troopers, who had no independent policy making authority, let alone any final policy making authority.  Sergeant Bohlen claims that she was responsible for ensuring that the troopers' conduct complied with existing MSP policy.  When important issues arose, she was required to seek guidance from higher authorities in the chain of command.

It is true that municipal policy may "'be found in formal or informal ad hoc policy choices or decisions of municipal officials authorized to make and implement municipal policy.'"  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Spell v.*

9

*McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987)). However, to support an official capacity claim, the act or decision must be tied to "a final decision maker" or an individual with "final policymaking authority." *See Lytle v. Brewer*, 77 F. Supp. 2d 730, 742 (E.D. Va. 1999). Plaintiffs' allegations merely depict Sgt. Bohlen as an individual who had certain coordinating and decision-making authority over the troopers on patrol; the allegations do not depict Sgt. Bohlen as a person who enjoyed any final policy making authority. *See, e.g.*, *Greensboro Prof. Fire Fighters Ass'n Local 3157 v. City of Greensboro*, 64 F.3d 962 (4th Cir. 1995) (distinguishing between final policy making authority and final decision making authority); *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987) ("'Policymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government.").

In their briefs, Plaintiffs state that Sgt. Bohlen is charged with command over a Maryland State Police Barrack, and that Bohlen was responsible for setting a policy or practice of "requiring visual inspection of women's upper bodies and underwear as a standard search for all female defendants." Pls.' Opp. in Resp. at 16. However, these contentions will not be countenanced, as they are not alleged or otherwise referenced in the Second Amended Complaint. Indeed, with respect to Sgt. Bohlen's role in strip searches, the allegations appear to contradict the claims made by the Plaintiffs in their briefs. Sergeant Bohlen and Presbury are alleged to have conducted the sexually invasive strip searches "under the final authority of Defendants Sheridan, Bane, and Harford County." Sec. Am. Compl. ¶¶ 151, 163.

Accordingly, the claims asserted against Sgt. Bohlen in her official capacity must be dismissed because she is not a final policy making authority.[9]

## CONCLUSION

For the reasons stated above, Defendant Bohlen's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Paper No. 138) is DENIED IN PART and GRANTED IN PART. Specifically, the motion is denied with respect to the claims asserted against Defendant Bohlen in her individual capacity but is granted with respect to the claims asserted against her in her official capacity. A separate Order follows.

Date: May 10, 2010

/s/_____
Richard D. Bennett
United States District Judge

---

[9] This Court has ruled that Defendant Superintendant Terrence Sheridan is properly named in his official capacity as a final policy maker for the Maryland State Police. *See Swagler v. Harford County*, No. 08-2289, 2009 U.S. Dist. LEXIS 47895, at *29-30 (D. Md. June 2, 2009).